ELLA M. WILLIAMS ET AL.

v.

ISAAC D. FLETCHER.

*Partnership—The Investment of Money in the Business of Another—Trust—Agreement for Priority of Payment of Creditor—Evidence.*

1. The delivery of a sum of money in trust to a person engaged in business, for investment therein, upon an agreement that it shall remain a specific time, and that a certain share of the profits shall be paid for its use, does not create a partnership.

2. What one party to a written contract says or writes to another, can not affect a third party without notice.

3. Nor is the testimony of such parties as to what they understood such contract to mean, or their motives in its creation, competent to affect its construction as between themselves or such third person.

4. In a controversy touching the ownership of a sum of money lodged in court to the credit of certain shares of stock of an insolvent corporation, this court holds that it belongs to the pledgee, the party claiming it not being a partner of the pledgor.

[Opinion filed February 13, 1889.]

APPEAL from the Superior Court of Cook County; the Hon. GWYNN GARNETT, Judge, presiding.

Messrs. PECKHAM & BROWN, for appellants.

Did the tripartite agreement of June 12, 1884, so change the relation of parties as to give Isaac D. Fletcher the right to appropriate the dividend which would otherwise come to Williams, as the poor remnant of the small fortune which he invested with Horace Fletcher? Isaac D. Fletcher, in his deposition, says that it did. The counsel for Isaac D. Fletcher insists that it did, and what is much more important to us, the Superior Court of Cook county agreed with them. Nevertheless, we venture to differ from them all. We have two reasons for it.

The first is, that the tripartite agreement by its terms was applicable only to the business owned by Horace Fletcher and Williams. When that business was transferred to the Japanese Development Company, which, in contemplation of law, and to a great extent, in fact, was an entirely different person from Horace Fletcher and Williams, that agreement expired.

In consenting to the transfer, Isaac D. Fletcher must be taken to have accepted, instead of the security given him by the tripartite agreement, such security as was embodied in the constitution of the company, namely, the assumption by the company of a part of Horace's debt to him.

But more important still, and conclusive to our minds, as an objection to the proposition that the tripartite agreement affects the present controversy, is the fact that the tripartite agreement did not affect, and was never intended by any of the parties to it to affect, the indebtedness of Horace Fletcher to Isaac D. Fletcher existing *before* the investment of Williams.

A contract means what the parties contracting understood it to mean when they made it, unless said meaning is plainly contradicted by its terms. See 1 Parsons on Contracts, star pg. 495.

We contend that this tripartite agreement meant simply this: That as to all sums of money advanced to the joint business of Fletcher & Williams, that is, to the business in which Williams was at least a *quasi* partner, Isaac D. Fletcher should be entitled without demur upon the part of Williams to repayment before any claim should be made by Williams for his $20,000, or any portion thereof. That

Williams v. Fletcher.

the agreement was not so limited in the most express terms, was because Williams did not know, as he has repeatedly testified, and did not suspect, that there was any indebtedness of Horace Fletcher to his brother antedating his (Williams') own investment.   That there was such an indebtedness was known to Horace Fletcher and to Isaac D. Fletcher, but they put such a construction upon the contract as precludes them, or either of them, from asserting successfully that they signed the contract with any idea that it referred to such indebtedness.

Messrs. FLOWER, REMY & HOLSTEIN and H. MUSGRAVE, for appellee.

We contend:

*First*, that appellee is in the position of a *bona fide* purchaser of the stock in question, without notice of any equities on the part of Williams.

*Second*, that even had Williams originally any right to the 200 shares of stock, his conduct, and the circumstances of the case, estop him from asserting it against Isaac D. Fletcher, the appellee.

The only thing in the record tending to show that Isaac Fletcher had any notice of Williams' rights, if any, to this stock, is the incompetent, hearsay testimony of Williams, that he understood from Horace Fletcher that his brother, Isaac Fletcher, was familiar with all his business transactions.   Nor was there anything in the relations of the parties, or the circumstances surrounding the transaction, which should have put appellee on inquiry.

The rule is well settled in this State, contrary to the rule in some States, that the pledgee of negotiable instruments, receiving the same before maturity in good faith, and without notice of equities as collateral security for an antecedent debt, without more, is a holder for value in the usual course of business.   Manning v. McClure, 36 Ill. 490; Mix v. Bank, 91 Ill. 20.

And the doctrine has been extended by our Supreme Court to *quasi* negotiable instruments and personal property.   Peters v. Elliott, 78 Ill. 321.

In Butters v. Haughwout, 42 Ill. 29, the court, per Breeze, J., referring to the case of Manning v. McClure, *supra*, says: "In that case it was held, after elaborate argument by able counsel, and full consideration, that a note assigned before due to secure a pre-existing debt, passes to the assignee discharged of latent equities ; that the assignee occupies the same ground as a *bona fide* purchaser for a valuable consideration paid at the time of the assignment. A reference to the authorities there cited fully establishes this doctrine, and we have no desire to abandon it. We think it consonant with reason and justice. And, after the most serious consideration, we have been unable to perceive any distinction, in principle, between commercial paper which is made the subject of transfer and goods and chattels. The case of Manning v. McClure recognizes to the fullest extent the principle that receiving a negotiable note before its maturity, in payment of a pre-existing debt, will exclude all equities between the original parties to the note, the assignee having no notice of these equities, and this is in harmony with section 9 of the act relating to negotiable instruments. Scates' Comp. 292.

"Why the rule should not be the same in the transfer of chattels, we are at a loss to perceive. The reason why it should not be the same in the transfer of chattels, as given by counsel for defendants in error, is that chattels pass in the market on the title of the vendor, and if he has none, he can confer none by a sale or transfer to his vendee. But, it may be asked, how is a purchaser of a chattel in the possession of his vendor to know he has no title, in the absence of circumstances to excite suspicion so as to put him on inquiry? How is he able to know his vendor obtained the goods by fraudulent representations? Possession of goods is one, and a strong *indicium* of ownership, and, if surrounding circumstances cast no suspicion on the character of this possession, why should not a purchaser in good faith of the property, without notice of any latent equity, be protected in the title thus acquired?"

Assuming, then, that appellee stands in the position of a *bona fide* purchaser, and that Williams is the owner of the 200 shares of stock (which we do not concede), we contend he is estopped from asserting his right to it as against appellee.

In T., W. & Ry. Co. v. Gilvin, 81 Ill. 517, it was said:

"There are some cases where the true owner of property is estopped, as against third parties, from asserting his title to the property: in cases where, by consent or acquiescence of the real owners, the property is permitted to be in such situation that a stranger has a right to assume that the title is in another, and does so assume, and on the faith of such evidence of ownership in the apparent owner, invests money or property or assumes some liability."

There are a multitude of cases bearing on this general doctrine. The law is familiar, and it would answer no useful purpose to cite the authorities, for each case when presented to the court must be decided upon its particular facts.

We refer the court generally to Bigelow on Estoppel (4th Ed.), 547; Morawetz on Private Corporations, Secs. 185–190; Colebrooke on Collateral Securities, Sec. 263, *et seq.;* Brundage v. Camp, 21 Ill. 330; Butters v. Haughwout, 42 Id. 29; M. C. R. R. Co. v. Phillips, 60 Id. 190; Kranert v. Simon, 65 Id. 344; Otis, Adm'r v. Gardner, 105 Id. 436, 444; Moore v. Met. Nat. Bank, 55 N. Y. 41; Driscoll v. West Bradley C. M., Co., 59 Id. 96; Armour v. M. C. R. R. Co., 65 Id. 111; Simpson v. Del Hoyo, 94 Id. 189.

Before the execution of the tripartite agreement Horace Fletcher was the individual debtor of both Isaac Fletcher and Williams. As to the enforcement of their claims against him, they stood on an equality. But as to benefits to be derived, Williams was in a far superior position. It was considered only fair that under these circumstances Isaac Fletcher should have priority of payment. Hence the tripartite agreement. There was some loose talk and correspondence about this being an acknowledgment of partnership; but it was such only to the extent that Williams had an interest in the profits Williams says that the money was invested at no risk to him. and that Horace was personally responsible for its payment. As between themselves, they were not partners. Lintner v. Millikin, 47 Ill. 178; Adams v. Funk, 53 Ill. 219.

The most strenuous contention of counsel is that the tripartite agreement did not refer to money loaned to Horace by Isaac Fletcher prior to the investment of Williams. In order

to avail themselves of this position, appellants must show that the indebtedness for which this stock is held as collateral security was incurred before October 18, 1883.

The agreement itself refers to all money advanced by Isaac before that date; and there is no dispute but that the money advanced before the investment of Williams was put into the business from which he was to derive profits. Ignoring the terms and construction of the agreement, it becomes a question of fact whether Williams had knowledge, before the execution of the tripartite agreement, that Horace was indebted to Isaac when the trust paper of October 18, 1883, was signed. Horace swears that Williams did have such knowledge. Williams denies it. The most that Williams claims is that such was his understanding. He made no inquiry. Horace Fletcher, in letter to Williams of July 3, 1884, urging him to sign the tripartite agreement (this agreement, although dated and forwarded to Williams, June 12, 1884, was not signed until some weeks afterward), says, "That First Japanese Company signed a similar one," which indicated that Horace was indebted to Isaac before Williams' investment. The circumstances surrounding the transaction all indicate that Williams had knowledge of the true situation.

GARY, J. In 1883 Horace P. Fletcher was a merchant in San Francisco, dealing in Japanese goods, under the business name of Ichi Ban. He then owed his brother, Isaac D. Fletcher, upwards of $30,000, which was invested in that business.

In July of that year Eldred C. Williams, under whom appellants claim, and to whose rights it is admitted they have succeeded, was in San Francisco, went into the Ichi Ban store, and from that began an acquaintance which resulted in the investment by Williams of $20,000, upon the terms shown by the following agreement:

"This agreement, made this eighteenth day of October, eighteen hundred and eighty-three, by and between Horace P. Fletcher, of the city and county of San Francisco, State of California, and Eldred C. Williams, of the city of Boston, county of Suffolk, State of Massachusetts,

" Witnesseth, that whereas, the said Williams is possessed of the sum of twenty thousand dollars U. S. lawful money, which he is anxious to invest in commercial business, and whereas he is inspired with confidence in the business ability and methods of said Fletcher, said Williams has on this day and date delivered to said Fletcher the said sum of twenty thousand dollars in trust, for the investment of the said sum to the best advantage, and to allow the same to remain in the hands of said Fletcher for the term of five years from the first day of January, eighteen hundred and eighty-four.

" The said Fletcher, in accepting the trust, agrees to invest the said twenty thousand dollars in his business in San Francisco, called Ichi Ban, with his own capital, and to use it all to the best advantage for the purpose of earning profit on the investment for the advantage of the said Williams, the same as if for himself. The said Fletcher agrees to credit to the account of said Williams the earnings of the said twenty thousand dollars, in proportion to the whole amount of money invested in the business.

" The proportion of the capital of the said Fletcher shall be determined by an inventory of the stock and other assets of the business, which it is agreed shall be taken at some time during the months of January, February or March, eighteen hundred and eighty-four.

" It is also agreed that the said Williams shall be entitled to draw against his prospective earnings the sum not exceeding ten per cent. per annum of his investment, in quarterly installments payable on the first of April, July, October and January of each year, allowing the balance of the earnings, if there be any, to accumulate in the business for its benefit.

" It is agreed that the rate of interest which capital shall draw from expense shall not exceed seven per cent. per annum, and the compensation for services of the said Fletcher shall not exceed the sum of six thousand dollars per annum.

(Signed)    " ELDRED C. WILLIAMS.<br>
"HORACE P. FLETCHER.

" Signed in presence of A. E. DENISON."

Williams testified that before he made the investment Fletcher told him that he had $100,000 of his own invested in the business; that there were no liabilities of any kind outside of some $2,000 or $3,000, being unpaid rent and salaries due employes. That he did not see the books, and did not know and had no reason to suppose that he was indebted to Isaac D. Fletcher. He (Horace) testifies that Williams did know of such indebtedness to some amount; that he told him before he gave him the money; but when pressed for details he can not remember any conversation.

The testimony of Williams as to what occurred between himself and Horace before the investment, is so far corroborated, that if the decision turned upon that, the version of Williams ought to be accepted. There is, however, nothing in the whole case indicating that Isaac D. Fletcher had any notice of the negotiations or inducements that preceded the investment. The next step was the following agreement:

" Whereas, Horace Fletcher is doing business at San Francisco, California, and also at Chicago, Illinois, in articles of Japanese manufacture and others of a kindred nature; and whereas, one Eldred C. Williams, of Boston, Massachusetts, has advanced to said Horace Fletcher certain capital for use in said business, for which use the said Wi.liams receives certain of the profits thereof;

" And whereas, Isaac D. Fletcher, of the city of New York, has advanced and loaned to said Horace Fletcher certain moneys and credits, and has agreed with said Horace Fletcher to loan him still other and further money and credits in said business;

"And whereas, it is the design and intention of each of the parties hereto that the said Isaac D. Fletcher, as between the parties hereto, shall be entitled to and have priority of payment of and for any and all said sums of money or credits so loaned, or which shall hereafter be loaned by him to said Horace Fletcher, over said Eldred C. Williams, for payment of any sum or sums advanced by him, or which shall hereafter be advanced by him, said Williams, to said Horace Fletcher;

" Now, this agreement, made this twelfth day of June, one thousand eight hundred and eighty-four, between Horace Fletcher, of San Francisco, California, party of the first part, Eldred C. Williams, of Boston, Massachusetts, party of the second part, and Isaac D. Fletcher, of the city of New York, party of the third part, in consideration of one dollar, lawful money, each to the other in hand paid, at or before the ensealing and delivery of these presents, the receipt whereof is hereby severally acknowledged,

" Witnesseth:   That the said parties of the first and second parts hereto, for themselves, their executors, administrators or assigns, covenant and agree to and with the said party of the third part hereto, his executors, administrators or assigns, that the said party of the third part for any and all sums of money, credits, or things in action which now have been, or hereafter may or shall be by him, the said party of the third part, loaned or advanced to the said party of the first part, during his, said party of the first part's continuance in the business aforesaid, rightfully claim and have, as between the parties hereto, priority of payment thereof over the said party of the second part, for any sums of money, credit, or things in action by him, the said party of the second part, loaned or advanced, or hereafter to be loaned or advanced to the said party of the first part.

" The intent of this instrument being to render any claim of the party of the second part, for all moneys or credits advanced, or to be hereafter advanced as aforesaid, subordinate and subject to the payment of all money or credits, or either of them, loaned or advanced by the said party of the third part to the party of the first part, as aforesaid.

"In witness whereof, the parties hereto have hereunto set their hands and affixed their seals, the day and year first above written.
        (Signed)                    " HORACE FLETCHER,
                                     " ELDRED C. WILLIAMS,
                                     " ISAAC D. FLETCHER."

The effect of this agreement the appellants seek to limit by the testimony of Williams, before stated; by some letters

of Horace, in which he stated to Williams that he had made arrangements with his brother for some credits for the benefit of the business, and that the paper was simply an acknowledgment of partnership to avoid any possibility of complication in case of his death; and by the further testimony of Williams that Horace told him that he had within a month, on the strength of it, borrowed $12,000 or $20,000 from Isaac, and he knew of no other indebtedness.

There is still the same absence of any evidence of notice to Isaac of these letters and further conversation between Horace and Williams, as has been alluded to before, with reference to what preceded the original investment.

Upon the agreement itself, the argument of the appellants that it should be limited to money advanced by Isaac to the joint business of Horace and Williams, lacks the foundation of any joint business to which it could apply. There was no partnership between them. 1 Lindley on Part., 23 *et seq.*

By the agreement of October 18, 1883, between Horace and Williams, the latter had, under an affluence of language that Micawber and his wife would not have disdained, become a creditor of the former for $20,000 on a credit of five years, without interest, but to be paid for the use of his money such per cent. as the profit of the business of Ichi Ban might be, reckoning interest upon capital not more than seven per cent. and the services of Horace not more than $6,000 per annum. In anticipation of the profits, Williams might draw $500 every three months; the residue of his share of the profits to remain, for the benefit of the business, to the end of the five years.

What knowledge Isaac had of the relations of Horace and Williams is left to inference; there is no evidence upon the subject; whatever Horace said or wrote to Williams is no evidence *per se* against Isaac. And the testimony of neither Horace nor Williams as to what they understood either of the agreements to mean or the motive for its execution, is competent to affect its construction, even between themselves, much less as to Isaac. Taylor's Ev., Sec. 1132.

The agreement of June 12, 1884, is then to be taken literally. Before September 23, 1884, Horace had started in Chicago

another Ban, called the Nee Ban, and on that day wrote to Williams that he had "decided to stock them," by which he meant a corporation, for $200,000, and should subscribe for the sum which he could carry himself, and also for the interest of Williams, and hold it as trustee, the same as he did the funds of Williams in trust. October 18, 1884, Williams wrote to Horace: "You have my full permission, so far as I am concerned, to sell the business and property of Ichi Ban and Nee Ban to the Japanese Development Company, and receive in payment stock in the Japanese Development Company."

When that company was organized it assumed the indebtedness of Horace and of the Bans, except $40,000 owing by Horace to Isaac. Horace, upon such organization, received a certificate for 874 shares of stock, 200 of which represented Williams' $20,000, and indorsed it in blank to Isaac as security for that $40,000. Still there is no evidence of any notice to Isaac of the relations between Horace and Williams, beyond what is shown by the agreement of June 12, 1884, to which the three were parties.

The Japanese Development Company failed, and in winding it up there is now in the Superior Court $1,013.30 to the credit of 200 shares of that stock.

The contest is whether Isaac or the appellants, having succeeded to the rights of Williams, shall have the money.

It is not necessary to consider in this case whether one taking as collateral security for a precedent debt has the same rights as if the security were for a new advance, for the appellants are not in a position to claim that their property or the property of Williams has been pledged. Williams had no interest in the property or business of the Bans. He had only a claim upon Horace for his $20,000 and such profit as Horace might make by the use of the money. He had no control or voice in the management of the business. He had no insurable interest. Lycoming Ins. Co. v. Barringer, 73 Ill. 230.

The cases in this State, without going out of it, are quite sufficient to establish the proposition that there was no partnership between Horace and Williams. Smith v. Knight, 71

Ill. 148; Adams v. Funk, 53 Ill. 219; Lintner v. Millikin, 47 Ill. 178; Niehoff v. Dudley, 40 Ill. 406.

There being no partnership, Horace was free to dispose of the property of the Bans.

He turned it into stock. Then he was free to dispose of the stock, not fraudulently, but in the ordinary course of business. He pledged it for a debt, which, by agreement of Williams, was to have priority over any claim of Williams. Williams, and those claiming under him, have no standing from which they can complain of that disposition of the property of Horace. It is true that Horace in his testimony says, as quoted in the abstract:

"When I arranged with my brother for these advances of finances, he told me that he should require papers; inasmuch as our agreements were in no regular order, that he should require papers from these individuals, and he said if they hold the relation to the concern of partners there is no reason why they should not sign the papers to that extent, and I told him there would be no difficulty whatever, and he made advances on my promise that I would get these papers."

And with reference to Williams:

" Q. Then you were to hold the money in trust for him? A. No, I was to put the money into the business and handle it the same as I did my own money, but I was not to be interfered with at all, and should have nobody to consult as to the management of the business.

" Q. He was to be a partner and not a partner? A. He was to be a partner in the profits and losses of the business, but not in the management. That was thoroughly well understood in the beginning."

But there is no evidence of any agreement between Horace and Williams, other than that of October 18, 1883, before recited, and the legal effect of this is not changed by such testimony. By it Williams was not liable for losses, or at most, not beyond the $20,000. It may be that he risked that upon the success of the business. The agreement of June 12, 1884, between Horace, Williams and Isaac, in one place speaks of Williams' money as capital advanced "for use in the business,

for which use the said Williams received certain of the profits thereof," and in another, as " sums of money  *  *  * loaned or advanced" to Horace. On the whole case it is clear that in law there was no partnership between Horace and Williams, and that none of the parties regarded them as sustaining such relations to each other as in law constitutes a partnership, whatever they may have thought was the legal effect of their real relations.

The decree awarding the fund in court to Isaac D. Fletcher is right.

GARNETT, P. J., having decided this case in the Superior Court, takes no part in this decision.

*Decree affirmed.*