## NATIONAL BANK OF OSHKOSH
### v.
## THE JENNINGS TRUST COMPANY, ASSIGNEE, ET AL.

## UNION NATIONAL BANK OF CHICAGO
### v.
## SAME.

## CORN EXCHANGE BANK OF CHICAGO
### v.
## SAME.

*Contracts—Construction of—Whether Partnership Formed Thereby— Distribution of Insolvent Estates.*

In the case presented, this court holds, that upon a proper construction of the written contracts introduced in evidence, the parties thereto were not, as between themselves, partners, although as to the rest of the world they may have become so by their acts and declarations; and that, assignments having been made of the alleged partnership business, as well as of other interests of the one of the alleged partners to whom belonged all the assets, to the appellee as assignee, and the creditors electing to hold such person separately liable, all questions as to marshaling of assets and election between funds were eliminated.

[Opinion filed April 27, 1892.]

APPEALS from the County Court of Cook County; the Hon. FRANK SCALES, Judge, presiding.

Messrs. WILLITS, ROBBINS & CASE, for appellant National Bank of Oshkosh.

Messrs. WILLITS, ROBBINS & CASE, for appellant Union National Bank of Chicago.

Messrs. DUPEE, JUDAH & WILLARD, for appellant Corn Exchange Bank of Chicago.

Messrs. AZEL F. HATCH and E. U. FLIEHMANN, for appellees.

GARY, J.   It is impossible within any reasonable space to summarize the evidence which, in our judgment, establishes the fact upon which we base our decision of these cases, and we shall therefore, in the main, only state results, and not processes by which we arrive at them.

In 1888, William L. Prettyman was engaged in the retail lumber business with a Mr. Lewis, under the firm name of Prettyman & Lewis.   July 6, 1888, he bought out Lewis, and July 24, 1888, made with Henry H. Bishop a written agreement as follows :

"Chicago, July 24, 1888.   It is understood between W. L. Prettyman and Henry H. Bishop, that said Henry H. Bishop shall receive for his services an amount equal to fifteen per cent of the net profits of the lumber business, with a guarantee from W. L. Prettyman, that said percentage shall amount to at least two thousand dollars per annum, W. L. Prettyman to have the privilege at any time of discharging Henry H. Bishop upon paying him two thousand dollars, less any part of said sum already drawn by Bishop.

".  "W. L. PRETTYMAN,

"H. H. BISHOP."

April 30, 1890, they stated an account between them, on the basis of that agreement, on a book of the former firm of Prettyman & Lewis.   August 25, 1890, they made these writings :

"August 25th, 1890.   Henry H. Bishop hereby agrees

to invest with the firm of W. H. Prettyman & Co. the proceeds of the sale of his real estate on Wilcox avenue, and to allow his profits beyond his expenses to remain in the business. ·He also agrees to do no other business but that of the firm.   William H. Prettyman agrees that he shall have one-quarter of all the property and shall pay one-quarter of the losses on the purchase of any real estate in the future, on the sales of all stock after the first fifty thousand, and on any other business of the firm.

" W. L. PRETTYMAN."

"August 25th, 1890.   Henry H. Bishop hereby agrees to invest with the firm of W. L. Prettyman & Co. the proceeds of the sale of his real estate on Wilcox avenue, and to allow his profits beyond his expenses to remain in the concern; he is to have one-fourth of the profits and losses from the purchase of any real estate in the future, upon all sales of stock after the sale of the first fifty thousand, and on any other business of the concern, but is·to do no other business but that of the concern.

"H. H. BISHOP."

And two days later this :

"August 27th, 1890.   It is hereby agreed between W. L. Prettyman and Henry H. Bishop, that the said Henry H. Bishop shall invest the proceeds of his property on Wilcox avenue, according to a certain agreement made between them on the 25th of August, 1890, within thirty days from this date, or failing to do so the said agreement shall be null and void, and the said Henry H. Bishop shall be entitled to none of the profits made by W. L. Prettyman & Co., but shall receive a salary of $2,500 per annum from the date of his last settlement to May 1, 1891, and shall be allowed a reasonable time to attend to private business, the same, however, not to be allowed to interfere with his attention to the lumber business.

" W. L. PRETTYMAN,<br>" H. H. BISHOP."

No other writings between them have been put in evidence, and no doubt these are all that were ever made touching their relations to each other.

In 1889 Prettyman organized a corporation called the North Division Lumber Company, of which he was president, and probably owner of all the stock, and Bishop vice president, and also started a banking business with which Bishop had no concern.

November 22, 1890, Prettyman individually by one instrument, Prettyman and Bishop as copartners under the name and style of W. L. Prettyman & Co., by another, and the North Division Lumber Company, by them as president and vice president, by another, severally made assignments for the benefit of creditors, and the assets of all are being administered by the appellee, as assignee, under the direction of the County Court. The appellants are respectively creditors, of the amount of whose debts respectively, no question is made, and, as we assume, creditors of the firm of W. L. Prettyman & Co., if in fact, as between themselves, Prettyman and Bishop were partners. That their conduct has been such that creditors, trusting to appearances, might hold them as such is clear; but the appellants wish to occupy the position of creditors of Prettyman individually, and not of any firm, and as all parties agree that the appellants respectively stand upon the footing of Prettyman and Bishop, as between themselves (Hanford v. Prouty, 133 Ill. 339, collects many cases), their real, and not merely their ostensible, relation to each other, is the most important subject of inquiry in this suit. That their agreement did not make them partners, unless Bishop invested the proceeds of his property on Wilcox avenue, as provided in the paper of August 27, 1890, is clear. Williams v. Fletcher, 30 Ill. App. 219; 129 Ill. 356.

Some of the debts upon which appellants claim originated within thirty days from August 27, 1890, and a distinction might be attempted between such debts and such as originated before the agreement of August 25th was made, or after the thirty days had expired; but, as we think, there would be no foundation for such distinction; if the condition in the paper of August 27th was not performed, the partnership relation was between the parties to it, and therefore as to

the appellants working out equities through them, wiped out. That the business was very irregularly conducted, that Bishop exercised very general powers, that both Prettyman and Bishop represented to other people that they were partners, is proved; that they ever agreed to be partners further than has been shown, is not proved. If their relations were not governed by the papers they executed, there is no guide to what those relations were. Now, on these records it is quite clear that with all the bookkeeping that has been done, nothing from the Wilcox avenue property was ever invested in the firm of W. L. Prettyman & Co. That property was exchanged for some on Belden avenue; some money was used by Bishop in making that exchange. He got it from the North Division Lumber Company, by having it there charged to W. L. Prettyman & Co., and by the latter to himself. After the exchange he raised by mortgage on the Belden avenue property, $6,000, which went back the same route by crediting it to himself, and charging it to the North Division Lumber Company on the W. L. Prettyman & Co. books. Whether the bookkeeping both ways was of the same sum exactly, does not appear; and the equity of redemption of the Belden avenue property was conveyed to Bishop's wife, which ends the matter as investment with W. L. Prettyman & Co.

On the whole case it appears to us that while to the world Prettyman and Bishop were partners, while perhaps between themselves they may have thought that the legal name for their relation was partnership, yet Prettyman never thought that Bishop was owner of any of the tangible property, or entitled to share in the profits of the business, nor did Bishop suppose himself liable to Prettyman for any portion of losses, if any should be incurred. In our view of the evidence all the assets, whether of the banking business, or of the business in the name of W. L. Prettyman & Co., were the separate property of W. L. Prettyman, in which Bishop had no interest, and all the creditors are entitled to hold him separately liable, though they might hold Bishop jointly with him if they would. The effect of this view is

necessarily to consolidate the assets and liabilities of the two concerns, and take out of the administration of the assets, all questions of marshaling assets, and election between funds. If all the assets belonged to Prettyman, and if, as between himself and Bishop, he is the sole debtor, the assets being all in the hands of the same assignee, under the control of one court, where the debts are proved, there is no need of, or reason for, any separation of the assets into two classes.

There is another view, to which, however, we do not commit ourselves. Twice, at least, the Supreme Court has decided that the statute, Ch. 76, "Joint Rights and Obligations," covers contracts not under seal. Marine Bank v. Ferry's Adm'r, 40 Ill. 255; Gage v. Mech. Nat. Bk. 79 Ill. 62. This may not be consistent with decisions that a judgment against one of several joint promisors is a bar for the others. Janson v. Grimshaw, 125 Ill. 468; nor with Union Nat. Bk. v. Bank of Commerce, 94 Ill. 27, and cases there cited; but that is not our affair. All contracts, not of record nor under seal, are of one grade and dignity; and that the lowest—parol. 1 Ch. Cont. 5. Promises joint by the common law, even if signed by the promisors severally, can only be several under the statute, by holding that the word obligations is used in a sense that includes all promises upon which an action will lie. Now if Prettyman and Bishop were partners, yet if their liability was joint and several, the creditors might elect, when they could ascertain how their interest stood, which estate, partnership or separate, they would share in (2 Lindley on Part. 747), or perhaps in both. Union Nat. Bk. v. Bank of Commerce, 94 Ill. 271. But we do not decide the case on this ground. We hold that between themselves Prettyman and Bishop were not partners, and therefore the appellants have a right to be treated as creditors of Prettyman only, if they choose.

The claims of the respective appellants were allowed by the County Court against the assets there considered as Prettyman's separate assets, as distinguished from the assets there considered as the assets of W. L. Prettyman &

Co., but to be paid only after his individual creditors were paid.

Holding, as we do, that the creditors of the supposed partnership are entitled to the character of creditors of Prettyman individually, in working out their equities through the supposed partners, the judgments appealed from are reversed, and the causes remanded, with directions to place the claims of the appellants on the same footing *pro rata* with the creditors of Prettyman individually.

*Reversed and remanded.*