## THE LYCOMING INSURANCE COMPANY

*v.*

## ROBERT R. BARRINGER.

1. PARTNERSHIP—*how it may exist.* An intention, or even an agreement, to form a partnership, does not create one. Persons may be partners as to third parties, and brought within all the liabilities of such relation as to them, who are not as between themselves; and as between partners, the property may belong exclusively to one member of the firm, although bound to third persons for the debts of the firm.

2. SAME—*what will constitute.* The mere fact that a person puts a certain amount of money into a business, and permits his name to be used as a partner, will not make him a joint owner of the goods used in the business, unless it was so agreed and understood at the time he so placed his money and permitted the use of his name. As to third parties dealing with them on the faith of a partnership, such parties are partners, but not *inter sese.*

3. INSURANCE—*degree of negligence to avoid.* One of the objects of insurance being recompense for one's negligence in case of a loss, if the negligence of the assured is not wilful or so gross as to amount to fraud, the insurer will not be released.

4. SAME—*what is gross negligence.* The term "gross negligence," as used in a condition in a policy of insurance exempting from loss on that account, is the want of that diligence which even careless men are accustomed to exercise.

5. SAME—*waiver of condition of forfeiture.* Although a policy of insurance may contain a condition rendering the policy void if the assured shall have any other insurance on the property without the consent of the company written on the policy, yet, if the agent of the company, at the time he issued the policy, knew of another insurance on the same property, and made no objection to issuing it on that account, and received the premium, this will be a waiver of the condition, and the policy will be binding.

APPEAL from the Circuit Court of Knox county; the Hon. ARTHUR A. SMITH, Judge, presiding.

Mr. F. S. MURPHY, and Messrs. SKINNER & MARSH, for the appellant.

Messrs. WILLIAMS, McKENZIE & CALKINS, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

The declaration in this case was assumpsit on a policy of insurance, setting out the same *in hæc verba*, bearing date May 10, 1872, for three thousand dollars, upon a stock of merchandize in a store building at Galesburg, in the county of Knox.

The pleas were, *non assumpsit*, and several special pleas of false representations as to value and as to sole ownership of the property, and gross negligence in the use of an improper and dangerous furnace and heating apparatus, and other insurance on the same property without notice to and consent of defendant, and false representations and statements, under oath, as to the value of the property destroyed, upon all which issues were made up and tried by a jury. The jury returned a verdict for plaintiff for three thousand dollars, the full amount of the policy, a total loss having been proved, on which judgment was rendered. To reverse this judgment the defendant appeals, and assigns several errors.

The first point appellant attempts to establish is, that the assured was not the sole owner of the goods destroyed, but the same were partnership property, and to this point several instructions were asked by the defendant. It is the leading question in the case, and has been fully considered.

The policy contains this provision: " If the interest of the assured in the property be any other than the entire, unconditional and sole ownership of the property, for the use and benefit of the assured, * * * it must be so expressed in the written part of this policy, otherwise the policy shall be void."

The claim by appellant is, that one A. Behrins, of Hudson, New York, was jointly interested in the goods insured, both at the time the insurance was procured and at the time of the loss, and, therefore, as appellee was not the sole owner, by force

of the above recited condition the policy was void, and appellant is not liable.

The facts referred to and relied on by appellant to establish this point, are, the statements made, under oath, by appellee, in his examination by appellant, as authorized by the policy, at the time their agents were engaged in adjusting the loss. He then said, his father-in-law, Mr. Behrins, entered into a special partnership with him in the month of April, 1872, for one year, to the amount of five thousand dollars, which was already in the business. His father-in-law represented himself to the larger creditors as a special partner for one year, and it was to those only the firm name of Robt. R. Barringer & Co. was used.

The defendant's counsel then read the affidavit of appellant, subsequently made by him, in which he states that in his sworn statement, made to this insurance company on the third of March, 1873, interrogatory 99 was so framed as to lead him to say that which might possibly be construed into a misrepresentation of the facts as to special partnership. He states there never was a legal special partnership existing between him and his father-in-law, A. Behrins, and he did not wish, in his answer to that and following interrogatory, to be understood as so saying. He then swears that these were the facts: that he had borrowed of his father-in-law five thousand dollars, who guaranteed to some of the creditors in these words: "This is to certify that I have agreed to become a special partner in business with Robt. R. Barringer, of Galesburg, Ill., and that until the papers of partnership can be had under the State laws of Illinois, I do agree that the capital already in the business belonging to me, five thousand dollars, shall remain at the risk of the business."

Affiant further stated, that he and his father-in-law talked about going into special partnership under the laws of this State, but it was never consummated, and Behrins was never interested in the profits of the business to any amount whatever, and never was a special partner of his, and when he used the expression "special partnership," it was such an inadvert-

ence as would happen in conversation among those not legally and technically accurate in the use of legal and commercial terms—he had, in fact, in his mind, the above mentioned guaranty.

Appellee further testified, that Behrins did not share in the profits, and that he owned the property destroyed by the fire, and that no one else, at that time, owned a joint interest in the goods. He further testified, that he borrowed five thousand dollars of his father-in-law about the time he commenced business, which he owed to him at the time of the fire, and which formed a part of the capital in the business. If the business succeeded, it was to be considered as borrowed, and if it did not, his father-in-law was to lose it. He further testified, that at the time of giving his deposition, he spoke of his father-in-law being a partner in the business, but he did not mean to convey the idea that he had an interest in the business as a partner, but in order to give a guaranty to the New York creditors, his money should stay in at the risk of the business for one year from the time it was given. After giving the certificate above set forth by his father-in-law, he testified he did business with some of his largest creditors in the name of Robt. Barringer & Co.—about six of them, in New York and Chicago. The "Co." meant his father-in-law, but with his small creditors he did not change the name. He further testified that he had been accustomed to send the notes he executed to his father-in-law for his indorsement, but the agreement to enter into partnership superseded the necessity of so doing. His father-in-law did not authorize him to use his name in the business. This he did on his own account, of which he never informed his father-in-law. The papers for a partnership were never signed by Behrins.

Whether a partnership exists or not, depends upon the intention of the parties. Parties may be partners as to third persons, when not so between themselves.

The evidence above set out shows, we think, that, as to this controversy and these goods involved in it, Behrins and appellee were not partners. A partnership was contemplated, but

never consummated.  An intention to form a partnership, or an agreement to form one, does not create a partnership. *Wilson* v. *Campbell*, 5 Gilm. 383.  As between partners, the property may belong exclusively to one member of the firm, although bound to answer the claims of third parties for the debts of the firm.  1 Parsons on Con. 148; and the same author says, and it is a familiar principle, that persons may be co-partners as to third parties, and brought within all the liabilities of such relation as to them, who are not, as between themselves, partners.  Ib. 158; *Niehoff* v. *Dudley*, 40 Ill. 406; *Stevens* v. *Faucet*, 24 ib. 483.

From the testimony, we can not doubt that Behrins had no interest in this concern, or in the goods, and that appellee might well assure the insurance company that the entire, unconditional and sole ownership of the property was in himself, and held for his own use and benefit.

This being the testimony, we see no error in giving the fifth instruction for the plaintiff, embodying, as it does, the principles we have been considering, and which are correct.  For the same reason, defendant's instructions numbered 16 and 17 were properly refused.  Instruction marked 15, in appellant's brief, was also properly refused.  The mere fact that a person puts a certain amount of money in a business, and permits his name to be used as a partner, would not make that person a joint owner of the goods used in that business, unless it was so agreed and understood at the time he so placed his money and permitted the use of his name.  As between third parties, they would be partners, but not *inter sese.*

The point of negligence is also made in the case, and it is complained the jury were not properly instructed thereon on behalf of the plaintiff.  The instruction deemed erroneous is this:

"The jury are instructed that, although they shall believe, from the evidence, that the plaintiff was a careless man, and was careless in the keeping and management of his furnace, still the jury can not find against the plaintiff and in favor of

the defendant, unless, from the evidence, the jury further believe that in that respect the plaintiff was wanting of the care which even an ordinarily careless man would have bestowed."

There was some evidence of plaintiff's apprehension of danger from the furnace by which the store was heated, and he spoke to the owner of the building on the subject, and advised him to insure the building, but after examination, some ten days before the fire, the owner declined doing so.

The sixth plea of defendant alleged that the fire was caused by the gross negligence of the plaintiff. The question, therefore. before the jury, was a question of gross negligence, and we think it was not error to tell the jury that the assured must be guilty of more than ordinary carelessness, to be guilty of gross negligence, for such is the purport of the instruction. One of the objects of insurance is, recompense for one's negligence. So that the negligence is not wilful, or of such a degree as amounts to fraud, the insurer would be, and ought to be responsible. It is said the term. "gross negligence," as used in a condition exempting from loss on that account, is, the want of that diligence which even careless men are accustomed to exercise. May on Ins. 495. We perceive no objection to the instruction.

Another point made by appellant grows out of this provision in the policy: "If the assured shall have or hereafter make any other insurance on the property hereby insured, without the consent of the company written herein, then this policy shall be void."

The proof is, and it is not controverted, that the agent of appellant, at the time he issued this policy, knew of the insurance on the stock in another company, and made no objection to issuing it on that account, and received the premium. This conduct of the agent is a waiver of the condition.

As this court said in *Commercial Ins. Co.* v. *Spankneble*, 52 Ill. 53, it would be a fraud to permit the company to receive the premium when they knew the policy was not binding, and which they never intended to pay. Numerous other cases

in this court, to the same effect, may be cited. *Ætna Ins. Co. v. Maguire*, 51 ib. 342; *Schettler's case*, 38 ib. 168; *Reaper City Ins. Co. v. Jones*, 62 ib. 458.

The seventh instruction given for the plaintiff on this point was right.

On the whole record, we perceive no error affecting the merits of the case, and are satisfied the recovery was right, and that justice has been done, and accordingly affirm the judgment.

<div align="right">

*Judgment affirmed.*