The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

---

ELLA M. WILLIAMS *et al.*

*v.*

ISAAC D. FLETCHER.

*Filed at Ottawa June 15, 1889.*

1. DEBTOR AND CREDITORS—*contract giving preferences—effect of subsequent transaction—whether abrogating such contract.* Where a debtor and his two principal creditors enter into a tripartite contract, in which it is expressly agreed that one of the creditors, for all moneys theretofore loaned or thereafter advanced to the debtor, shall have right of priority of payment over the other, if entered into without fraud, and understandingly, such contract will be binding and conclusive on the parties, and the first named creditor will have the right to demand full

payment of his advances, as against the other creditor. And if the debtor should sell out his business and effects, and take stock in an incorporated company in payment, the creditor so preferred by the terms of the original contract will have the right to take and hold the certificates of stock as collateral security for his debt, as against the other creditor.

2. Under such contract nothing would prevent B, to whom the advances had been and were to be made, if acting in good faith and with business prudence, from associating with himself in the conduct of the business, others, either as partners or as joint stockholders in a corporation, with or without the consent of the lender, so that such subsequent arrangement should in nowise impair the right of preference already existing in the latter.

3. CONSTRUCTION OF CONTRACTS—*intention of the parties as expressed.* While it is true that a contract means what the parties understood it to mean, still they will be presumed to have meant what their language imports. It is not what one of the parties may have intended, but what is shown by the contract to have been the intention of all the parties thereto.

4. PURCHASER—*without notice—how far protected.* As a general rule, applicable to property other than negotiable securities, the vendor can convey no greater right than he has. But when the true owner holds him out or allows him to appear as owner of or as having full power of disposition over the property, and innocent third persons are thus led into dealing with such apparent owner, they will be protected.

5. The rights of innocent third persons in such cases do not depend upon the actual title or authority of the party with whom they deal, but are derived from the act of the real owner, which precludes him from disputing, as against them, the existence of the title or powers, which, through negligence or mistaken confidence, he caused or allowed to appear to be vested in the party making the conveyance.

6. PARTNERSHIP—*whether the relation exists—a co.itract construed.* A entered into a contract with B, by which the former agreed to, and did, advance $20,000 to B, to be invested for five years in the business of the latter, who was to credit A with the earnings of such sum, in the proportion it bore to the whole amount invested in the business, and it was agreed that an inventory should be taken of B's stock and assets, to fix such proportion, and that A might draw against his prospective earnings a sum not exceeding ten per cent of his investment, payable quarterly, and that the rate of interest which the capital should draw from expense should not exceed seven per cent, and the compensation to B for services should not exceed $6000 per annum: *Held*, that this did not constitute them partners; that the business belonged to B, who had the sole right to manage and control it, and that A's right was against B for the profits, and finally for repayment of the $20,000.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. GWYNN GARNETT, Judge, presiding.

On the 8th day of October, 1883, one Horace P. Fletcher and Eldred C. Williams entered into the following agreement:

"This agreement, made on this 18th day of October, 1883, by and between Horace P. Fletcher, of the city and county of San Francisco, State of California, and Eldred C. Williams, of the city of Boston, county of Suffolk, State of Massachusetts:

"*Witnesseth,* that whereas, the said Williams is possessed of the sum of $20,000, United States lawful money, which he is anxious to invest in commercial business; and whereas, he is inspired with confidence in the business ability and methods of the said Fletcher: Said Williams has, on this day and date, delivered to said Fletcher the said sum of $20,000, in trust, for the investment of the said sum to the best advantage, and to allow the same to remain in the hands of said Fletcher for the term of five years, from the 1st day of January, 1884. The said Fletcher, in accepting the trust, agrees to invest the said $20,000 in his business in San Francisco, called Ichi Ban, with his own capital, and to use it all to the best advantage for the purpose of earning profit on the investment, for the advantage of said Williams the same as if for himself. The said Fletcher agrees to credit to the account of said Williams the earnings of the said $20,000, in proportion to the whole earnings as the said $20,000 is in proportion to the whole amount of money invested in the business. The proportion of the capital of said Fletcher shall be determined by an inventory of the stock and other assets of the business, which it is agreed shall be taken at some time during the month of January, February or March, 1884.

"It is also agreed that the said Williams shall be entitled to draw against his prospective earnings the sum not exceeding ten per cent per annum of his investment, in quarterly

installments, payable on the 1st of April, July, October and January of each year, allowing the balance of the earnings, if there be any, to accumulate in the business for its benefit.

"It is agreed that the rate of interest which capital shall draw from expense shall not exceed seven per cent per annum, and the compensation for services of the said Fletcher shall not exceed the sum of $6000 per annum.

Eldred C. Williams,

Horace P. Fletcher."

On the 12th of the following June, they, with appellee, made the following tripartite agreement:

"Whereas, Horace Fletcher is doing business in San Francisco, California, and also at Chicago, Illinois, in articles of Japanese manufacture, and others of a kindred nature; and whereas, one Eldred C. Williams, of Boston, Massachusetts, has advanced to said Horace Fletcher certain capital for use in said business, for which use the said Williams receives certain of the profits thereof; and whereas, Isaac D. Fletcher, of the city of New York, has advanced and loaned to said Horace Fletcher certain moneys and credits, and has agreed with said Horace Fletcher to loan him still other and further money and credit in said business; and whereas, it is the design and intention of each of the parties hereto that the said Isaac D. Fletcher, as between the parties, shall be entitled to and have priority of payment of and for any and all said sums of money or credits so loaned, or which shall hereafter be loaned, by him to said Horace Fletcher, over said Eldred C. Williams, for payment of sum or sums advanced by him, or which shall hereafter be advanced by him, said Williams, to said Horace Fletcher:

"Now, this agreement, made this twelfth day of June, 1884, between Horace Fletcher, of San Francisco, California, party of the first part, Eldred C. Williams, of Boston, Massachusetts, party of the second part, and Isaac D. Fletcher, of the city of

New York, party of the third part, in consideration of one dollar, lawful money, each to the other in hand paid at or before the ensealing and delivery of these presents, the receipt whereof is hereby severally acknowledged:

"*Witnesseth*, that the said parties of the first and second parts hereto, for themselves, their executors, administrators or assigns, covenant or agree to and with the said party of the third part hereto, his executors, administrators or assigns, that the said party of the third part, for any and all sums of money, credits or things in action which now have been or hereafter may or shall be by him, the said party of the third part, loaned or advanced to the said party of the first part during his (said party of the first part's) continuance in the business aforesaid, rightfully claim and have, as between the parties hereto, priority of payment thereof over the said party of the second part, for any sums of money, credit or things in action by him, the said party of the second part, loaned or advanced, or hereafter to be loaned or advanced, to the said party of the first part; the intent of this instrument being to render any claim of the party of the second part, for all moneys or credits advanced or to be hereafter advanced as aforesaid, subordinate and subject to the payments of all money or credits, or either of them, loaned or advanced by the said party of the third part to the party of the first part, as aforesaid.

"In witness whereof, the parties hereto have hereunto set their hands and affixed their seals, the day and year first above written.                    HORACE FLETCHER,

ELDRED C. WILLIAMS,

ISAAC D. FLETCHER."

On the 18th day of the following October, said Williams gave said Horace Fletcher the following letter:

"CHICAGO, *October 18, 1884.*

"HORACE FLETCHER—You have my full permission, so far as I am concerned, to sell the business and property of Ichi Ban and Nee Ban to the Japanese Development Company,

and receive in payment stock in the Japanese Development Company. In case of a payment of a bonus in stock over the appraised value of the property of Ichi Ban and Nee Ban to the Japanese Development Company, I agree to waive all claim to any participation in said bonus of stock, provided that the interest which I have placed in your hands is not assessed for a *pro rata* percentage to pay said bonus.

ELDRED C. WILLIAMS."

May 6, 1885, Horace received from the Japanese Development Company a certificate for eight hundred and seventy-four shares of its capital stock, of the value of $100 each, and indorsed the same in blank and delivered it to appellee. In the latter part of the year 1886 the Japanese Development Company suspended, and, by an order of the Superior Court of Cook county, all its business, property and effects went into the hands of a receiver. The affairs of the corporation being settled and all its debts paid, the sum of $4428.13 remained to be applied on the said eight hundred and seventy-four shares of stock held by appellee. Appellants having succeeded to all the rights of said Williams in and to said shares of stock, if any he had, filed an interpleader in said Superior Court, claiming to own two hundred of the eight hundred and seventy-four shares of stock, upon which they were entitled to a distributive part of said $4428.13, amounting to $1013.30. About the same time appellee also filed his interpleader, claiming the whole $4428.13, denying that appellants owned any part of the said shares of stock. The decision of the Superior Court sustaining the claim of appellee was affirmed by the Appellate Court for the First District. Further facts appear in the opinion.

Messrs. PECKHAM & BROWN, for the appellants.

Messrs. FLOWER, REMY & HOLSTEIN, and Mr. H. MUSGRAVE, for the appellee.

Mr. Justice Wilkin delivered the opinion of the Court:

A reversal of the judgment of the Appellate Court is urged here on the single ground that the finding and decree of the Superior Court were contrary to the law and the evidence. Appellants insist that by the payment of the $20,000 by Williams to Horace Fletcher, under the agreement of October 8, 1883, and the subsequent transactions between them, two hundred of the shares of stock issued to Horace by the Japanese Development Company, and by him indorsed to appellee, became and were the property of Williams, and that Horace had no right or authority to indorse them to appellee. Appellee, by his interpleader, claims, even as between Horace and Williams, some of the stock was owned by the latter; but he also contends, that, waiving that question, no claim to such ownership in Williams can be successfully maintained against him, he being an innocent holder.

At the date of the first contract above mentioned, Horace Fletcher was proprietor and manager of a Japanese store in San Francisco, California, called "Ichi Ban." Subsequently, but before the tripartite contract was made, he had established a branch of that business in Chicago, which he called "Nee Ban." All the property and business of these stores was transferred to the said Japanese Development Company, a joint stock corporation organized in the month of September, 1884, for which Horace Fletcher received the said shares of stock. At that time the indebtedness from Horace to appellee amounted to about $80,000, of which the development company assumed all but $40,000. For this last amount Horace executed and delivered to appellee his promissory note, and indorsed the said certificate of stock as collateral security. Appellee testified that the $40,000 for which said note was given went to pay, in part, for the subscription to the capital stock of the corporation made by Horace, and that he consented thereto only upon the express agreement that the stock should

be assigned and delivered to him as security on the note, and he is wholly uncontradicted as to that fact. The indebtedness from Horace to appellee is not questioned, nor is it denied that much more than the whole amount here involved remains due and unpaid thereon.

We have examined the evidence, and find no fact or circumstance proved from which it can be inferred that appellee took the certificate of stock with notice that any part of the shares therein specified belonged to Williams. The evidence of appellee is direct and positive to the contrary. The record is also barren of evidence of fraud, even on the part of Horace, much less of appellee, in procuring the execution of the tripartite agreement. On the contrary, it clearly appears that Williams executed it after the fullest opportunity to examine and ascertain its contents and learn its legal effect, and that he deliberately signed it after consulting an attorney, neither of the Fletchers being present or in any way influencing him in the matter. He does not pretend that he was misled, or mistaken, even, as to any fact affecting his rights under that contract, except that he did not know that Horace owed appellee anything at the time he placed his $20,000 in his hands; but as to that fact he does not claim that he was deceived by anything done or said by Horace, for the purpose of practicing a fraud upon him. He made no inquiry, took no steps whatever to ascertain how much money appellee had previously loaned Horace, or when the loans were made, nor as to what future advances were to be made, before signing and delivering the tripartite agreement. Having executed it freely and voluntarily, he must submit to its terms, unless he has shown that he has, in some way, been discharged from its obligations. That agreement admits of no construction. It treats Horace P. Fletcher as the debtor of both appellee and Williams; states that appellee has agreed to make further advances and loans, not to Williams and Horace, but to Horace individually, and contemplates that Williams may also do so; and as to all such

debts then existing or to be contracted, it is in the most positive terms agreed that appellee shall be first paid.

Had the business of the Bans been closed directly, instead of being transferred to the Japanese Development Company, appellee's right to payment in full, as against Williams, would certainly be conceded under the terms of that agreement. Did the transfer operate to abrogate that contract? Appellants insist that it did, because, they say, the contract was "applicable only to the business owned by Williams and Horace Fletcher." But that contract did not recognize Williams as part owner of any 'business, and, as a matter of law, he was not. The only the way upon which it can be claimed that he was part owner with Horace in the Bans, is, that by the terms of the contract of October 8, 1883, they became partners, and the contract admits of no such construction. 1 Lindley on Partnership, 23; *Lycoming Ins. Co.* v. *Barringer,* 73 Ill. 230; *Smith* v. *Knight,* 71 id. 148; *Adams* v. *Funk,* 53 id. 219; *Niehoff et al.* v. *Dudley,* 40 id. 406.

The business belonged to Horace Fletcher, and he had the sole right to manage and control it. Williams' right was against him for the profits, and, finally, for repayment of the $20,000 at the expiration of five years. There is nothing in the contract of October 8, 1883, which would prevent Horace Fletcher, acting in good faith and with business prudence, from associating with himself others, either as partners or joint stockholders in a corporation, with or without the consent of Williams. He did, however, consent that the business should be transferred to the development company. True, he swears that he consented thereto only upon the express agreement of Horace that the two hundred shares of stock should be issued in his name and delivered to him personally, the effect of which would have been to end the trust relation created by the former contract, and allow him to become a joint stockholder in the corporation. Such contract, if made, would be of no binding force upon appellee, unless he agreed to it

also, of which there is no pretense of proof. Horace Fletcher denies that there was any such agreement, and we think the subsequent conduct of Williams is so inconsistent with such an understanding, that if the determination of that fact was necessary to a decision of the case, we would be compelled to find it against appellants. It clearly appears that after the organization of the corporation, and after he knew the shares of stock had been issued to Horace, Williams continued to receive quarterly payments from Horace up to January, 1886, for which he gave a receipt as late as January 8, 1885, stating that the sums received "were to be deducted from the profits, and in case of no profits the amount to be considered in settlement of the business." No attempt is made by Williams to explain this conduct on his part, and we think it is explainable only upon the supposition that he continued to rely upon the contract relations existing between himself and Horace, and at no time understood that he was a stockholder in the Japanese Development Company.

We hold that the tripartite agreement continued in full force after the transfer of the stores to the company, and must control the rights of the parties to this controversy.

As to the point made, that that contract did not cover any indebtedness from Horace to appellee existing at the time of the investment by Williams, it need only be said that no such qualification or limitation is found in the contract. It is true, as contended by counsel for appellants, that "a contract means what the parties contracting understood it to mean when they made it;" but it is also true that the parties will be presumed to have meant what their language imports. It is not what one of the parties may have intended, but what is shown by the contract to have been the intention of all parties thereto. Here the language of the agreement is plain and unambiguous, and its legal effect can not be escaped by appellants because Williams may not have understood it. It is also true that the evidence does not prove that any part of such prior

indebtedness entered into the consideration of the note for which the stock in question is held as collateral security.

On the ground that Horace Fletcher was the owner of the whole eight hundred and seventy-four shares, the judgment of the Appellate Court must be affirmed; and even if it were held that as between appellants and Horace two hundred of the shares were owned by Williams, still, appellee being an innocent holder, the judgment was right on the doctrine concisely stated by RAPALLO, J., in *McNeil* v. *Tenth Nat. Bank,* 46 N. Y. 325, thus: "It must be conceded, that, as a general rule applicable to property other than negotiable securities, the vendor or pledgor can convey no greater right or title than he has. But this is a truism predicable of a simple transfer from one party to another, where no other element intervenes. It does not interfere with the well-established principle, that where the true owner holds out another, or allows him to appear, as the owner of or as having full power of disposition over the property, and innocent third parties are thus led into dealing with such apparent owner, they will be protected. Their rights in such cases do not depend upon the actual title or authority of the party with whom they deal directly, but are derived from the act of the real owner, which precludes him from disputing, as against them, the existence of the title or power, which, through negligence or mistaken confidence, he caused or allowed to appear to be vested in the party making the conveyance."

*Judgment affirmed.*