(No. 15162.—Reversed and remanded.)
FLOYD JOHNSON, Defendant in Error, vs. E. F. PENDER-
GAST, Plaintiff in Error.

*Opinion filed April 18, 1923—Rehearing denied June 6, 1923.*

1. APPEALS AND ERRORS—*errors not argued in Appellate Court
are waived.* Errors alleged in the plaintiff in error's brief in the
Appellate Court as to the giving and refusing of instructions are
waived in the Supreme Court if not pointed out in the argument
in the Appellate Court.

2. EVIDENCE—*what is nature and effect of prima facie evidence.*
*Prima facie* evidence, whether adopted as a rule of law or created
by statute, means only that a determination of a fact shall be suf-
ficient to justify a finding of a related fact in the absence of any
evidence to the contrary, and its only effect is to create the neces-
sity of evidence to meet the *prima facie* case.

3. SAME—*creation of prima facie evidence does not change the
burden of proof.* That a certain fact is made by law or statute
*prima facie* evidence of the existence of another fact does not
change the burden of proof but merely determines the verdict or
finding if no other evidence is introduced.

4. SAME—*other evidence must be considered with prima facie
evidence.* As soon as opposing evidence is received in rebuttal of
the case made by *prima facie* evidence the case is to be determined
upon all the evidence, and the question is whether the weight pre-
ponderates in favor of the party having the burden of proof.

5. NEGLIGENCE—*what must be established by plaintiff suing for
injury caused by traffic in public streets.* The streets and highways
are for the use of the public generally and each person using the
same has rights and assumes duties and obligations to others, and
a plaintiff suing for an injury alleged to have been caused by the
defendant's negligence in the use of the streets has the burden of
proving that he (the plaintiff) was in the exercise of the care re-
quired by the law and that the defendant was negligent in failing
to observe such care.

6. SAME—*failure to observe a traffic ordinance is prima facie
evidence of negligence.* Failure to comply with the requirements
of an ordinance as to signals to be given by drivers of motor
vehicles when stopping or turning is, in law, *prima facie* evidence
of negligence.

7. SAME—*a statute declaring prima facie case is a rule of law.*
A statute declaring that a certain rate of speed of a motor vehicle

shall constitute *prima facie* evidence of negligence on the part of the driver is a rule of law and not a rule of evidence.

8. SAME—*when instruction as to prima facie case is erroneous in ignoring evidence in rebuttal.* In an action for personal injuries alleged to have been caused by defendant's negligence in the use of the public streets, an instruction that the defendant's failure to observe the provisions of a traffic ordinance, if established by proof, is *prima facie* evidence of negligence and warrants a verdict for the plaintiff, is erroneous where it ignores evidence for the defendant tending to show that the plaintiff himself violated a statute concerning the rate of speed on public highways.

9. SAME—*when failure to give traffic signal cannot create liability.* Failure of the driver of an automobile to give a certain signal required by a traffic ordinance cannot create a liability for an injury resulting from a collision if, as a matter of fact, the signal would have been useless under the circumstances and the plaintiff was negligent in exceeding the statutory rate of speed.

10. SAME—*instruction should not permit jury to dispense with rules of law.* An instruction that "jurors are not artificial beings, governed by artificial or fine-spun rules," and that there is no rule of law that requires the jury to believes as jurors what they would not believe as men, is erroneous, as it permits the jury to disregard rules of law given in other instructions.

11. SAME—*when defendant cannot complain that jury took the declaration.* The jury should not be permitted to take pleadings in civil cases to the jury room on their retirement to determine what the issues are, but where the defendant has asked the court to give, and the court has given, instructions by which the jury are to determine the issues from the plaintiff's declaration, the defendant cannot complain, on review, that the jury had the declaration.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Winnebago county; the Hon. ROBERT K. WELSH, Judge, presiding.

REYNOLDS & RECKHOW, (MORRIS J. HINCHCLIFF, and SIGMUND LIVINGSTON, of counsel,) for plaintiff in error.

GARRETT, MAYNARD & HULL, for defendant in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The Appellate Court for the Second District affirmed the judgment recovered by Floyd Johnson, defendant in error, in the circuit court of Winnebago county, against E. F. Pendergast, plaintiff in error, for $4800 for personal injuries resulting from a collision of a motorcycle on which the defendant in error was riding, with the automobile of the plaintiff in error, in the city of Rockford on April 23, 1919, and a writ of *certiorari* was awarded for a review of the judgment.

The original declaration contained nine counts, and included the E. F. Pendergast Company, a corporation, and Margaret I. Pendergast, with the plaintiff in error, as defendants. At the conclusion of the evidence the plaintiff by leave of court amended the first count and withdrew from the jury all of the declaration except the first count as amended and the seventh count, and the cause was submitted on those counts. The first count as amended charged that the defendant, through his agent, Margaret I. Pendergast, was possessed of, operating and driving an automobile in a westerly direction on the northerly side of West State street, in the city of Rockford, which was then a thickly populated business section of the city; that section 20 of chapter 61 of the revised ordinances of the city of Rockford in force at the time was as follows:

"Sec. 20. Before slowing up or stopping, drivers shall signal to those behind by raising the whip or hand vertically, and in turning while in motion, or in starting to turn from standstill, a signal shall be given by indicating by the whip or hand the direction in which the turn is to be made."

The count also charged that section 3 of said ordinances contained the following: "The word 'driver' shall include the rider or driver of a horse, the rider of wheels or the operator of a motor vehicle or street car." It was then charged that Margaret I. Pendergast, in charge of the auto-

308—17

mobile, failed to give any warning or signal by the hand or otherwise, as provided in said city ordinances, and negligently and suddenly turned the automobile directly across and toward the middle of West State street directly in front of plaintiff, then riding a motorcycle, and by reason of such negligence the collision occurred, with the consequent injury and damage. The seventh count made the same averments as to the ownership of the automobile, the fact that it was being driven by Margaret I. Pendergast and the portion of the street being a thickly populated business section, and charged general negligence of Margaret I. Pendergast in driving and managing the automobile so that it struck and ran into and collided with the motorcycle on which the plaintiff was riding.

In the petition for a writ of *certiorari* it was claimed that the court erred in giving instructions 2, 4, 5 and 11 at the instance of the plaintiff and in refusing to give instructions 2, 5 and 6 tendered by the defendant, and argument was presented in support of this claim. A certified copy of the brief and argument for the plaintiff in error filed in the Appellate Court has been filed here, and shows that while in the brief error was alleged in the giving and refusing of these instructions no error was pointed out in argument except as to instructions 5 and 11, and under the rule alleged errors were waived and cannot be availed of in this court.

Instruction 5 given for the plaintiff, alleged to have been erroneous and supported by argument in the Appellate Court, is as follows:

"If the jury believe from the evidence that at the time of the accident in question, April 23, 1919, there was in force and effect, in the city of Rockford, an ordinance which among other things provided as follows: 'Before slowing up or stopping drivers shall signal to those behind by raising the whip or hand vertically and in turning while in motion or in starting to turn from standstill a signal

shall be given by indicating with the whip or hand the direction in which the turn is to be made.' ''The word 'driver' shall include the rider or driver of a horse, the rider of wheels and the operator of a motor vehicle or street car.' The court instructs the jury, if they find from the evidence that the defendant, immediately prior to the accident in question, through a servant or agent, failed to comply with the foregoing provision of said ordinance and that the place where said accident took place, was within the limits of the city of Rockford, then such failure is *prima facie* negligence and if the jury believes from the evidence that the defendant was so negligent and that such negligence was the proximate cause of the injury to plaintiff then the plaintiff is entitled to recover, provided the jury find from the evidence that at the time of the injury and immediately prior thereto, the plaintiff was in the exercise of ordinary care and caution for his own safety.''

To determine whether the court erred in giving this instruction it is necessary to state in a general way the evidence to which it was to be applied by the jury.

The collision occurred at a point on West State street about 75 feet west of the west line of the intersection of the street with Winnebago street, running north and south across West State street. It was about noon and the street practically clear and unobstructed. The street is 44.3 feet wide from curb to curb, with two street car tracks in the center. The distance between the outer rails and the curb on each side is about 14.2 feet. Defendant was the owner of an automobile which was being driven by his daughter, Margaret I. Pendergast, (now Margaret I. Schmauss.) She came from the east and stopped the car, headed west, on the north side of the street at the curb in front of a grocery store located 60 feet west of the street intersection and went into the store and purchased some groceries. When she came out of the store the automobile of Dr. P. L. Markley was standing in front of her automobile at a dis-

tance of three or four feet, and there was an automobile standing behind her car a distance of three or four feet, which had stopped there while she was in the store. She took her position at the steering wheel at the left-hand side, next the roadway. Dr. Markley was cranking his car trying to get it started, and she turned her car, which was a long touring car, to the left past that car, when the plaintiff, riding a ten-horse-power Harley-Davidson twin-cylinder motorcycle, was coming from the east. The motorcycle struck the automobile at the front end of the running-board, at the fender, and plaintiff's leg was broken in two places.

The plaintiff testified that he was from 10 to 15 feet from the automobile when he saw it turn away from the curbing and he had seen the car standing there prior to that time; that there was no signal or warning of any kind before it turned; that he was going about twelve miles an hour when he first saw the automobile turn out, and at the time he struck the automobile he was going about seven miles an hour; that it shot straight out and covered all four railroad tracks and was headed south; that he pulled to the left and tried to avoid a collision and then turned to the right but could not get by there, so he threw his clutch, put on his brakes and went straight; that when he started to go around the automobile it was moving slowly and was then speeded up.

As to the location of the automobile after the accident, one witness for the plaintiff said that it was headed directly south, covering the car tracks; another that it was headed pretty near south; another that it was facing a little diagonally across the street but not directly west; another that it was headed not directly west but diagonally across the street; and another that it was facing nearly due south. As to the speed at which the plaintiff was driving, one of his witnesses testified that he was driving between twelve and fifteen miles per hour just before the time of the accident, and another that at the time of the accident he was

running somewhere along fifteen miles an hour; that he saw the motorcycle just prior to the time the accident occurred, and he could not see that plaintiff did anything with his motorcycle.

Dr. Markley, a witness for the plaintiff, said that he got into his car to start it and it would not start and he got out to crank the engine; that at the time of the crash the front end of the Pendergast car was about even with the front end of his car but farther away in the street, and that the north fender of the Pendergast car was out far enough so that it would be ten feet from his south fender.

Mrs. Schmauss testified that when she came out of the store with her groceries there was a car in the rear of her car which was not there when she went into the store, and the Markley car was about three or four feet ahead of her car; that she started the engine, released the brake and put the car in first gear; that she looked back and saw there was a Ford car coming and waited for that to pass; that after it had passed she looked back again and saw there was nothing more coming and started then to pull around Dr. Markley's car, and that the front part of her car had just got out so it would barely clear Dr. Markley's car and she looked and the motorcycle crashed into the front fender where it joins onto the running-board, and that the front wheels of her car were facing west, a little to the south.

Where two facts are so related to each other that in reason and human experience the existence of one may fairly be inferred from the other, the law may declare that proof of one shall be *prima facie* evidence of the existence of the other. Such a rule is one which the policy of the law and the ends of justice require, and in every case it is sufficient to authorize the finding of the fact presumed to exist unless contradicted or explained. It may either be a rule of law or a rule created by statute, as in the case of the possession of implements, devices or apparatus for gambling, the possession of stolen property soon after the lar-

ceny, or the failure, suspension or involuntary liquidation of a banker within thirty days from receiving a deposit. (*Meadowcroft* v. *People,* 163 Ill. 56.) That a certain fact is made by law or statute *prima facie* evidence of the existence of another does not change the burden of proof but merely determines the verdict or finding if no other evidence is introduced. The existence of the *prima facie* case is provisional, and does not change the burden of proof but only the burden of introducing further evidence. It means only that a determination of a fact shall be sufficient to justify a finding of a related fact in the absence of any evidence to the contrary. The only effect is to create the necessity of evidence to meet the *prima facie* case created, and which, if no proof to the contrary is offered, will prevail. (*Helbig* v. *Citizens' Ins. Co.* 234 Ill. 251; *City of Carlinville* v. *Anderson,* 303 id. 247; 2 Chamberlayne on Evidence, sec. 994; *Inhabitants of Cohasset* v. *Moors,* 204 Mass. 173; *Kelly* v. *Morris,* 6 Pet. 622.) As soon as opposing evidence is received the case is to be determined upon all the evidence,—the *prima facie* evidence and all other evidence,—and the question is whether the weight preponderates in favor of the party having the burden of proof. The streets and highways are for the use of the public generally, and each person using the same has rights and assumes duties and obligations to others, and the plaintiff assumed the burden of proving that he was in the exercise of the care required by the law and that defendant was negligent in failing to observe such care. This was to be determined by the jury from all the evidence in the case.

Under the authority to declare what should constitute a *prima facie* case of negligence, the city of Rockford, in the exercise of its police power, provided that drivers in starting to turn from a standstill should give a signal by indicating with the whip or hand the direction in which the turn was to be made, and the failure to comply with that requirement would in law be *prima facie* evidence of neg-

ligence, and the instruction was right in saying so. But that was not the only law to be considered. The legislature, by section 22 of the Motor Vehicle law, has provided that no person shall drive a vehicle of the first division (which included the motorcycle of the plaintiff) upon any public highway at a speed greater than is reasonable and proper having regard to the traffic and the use of the way or so as to endanger the life or limb or injure the property of any person, and if the rate of speed of any motor vehicle or motorcycle of that division operated upon any public highway in this State where the same passes through the closely built-up business portions of any incorporated city, town or village exceeds ten miles an hour, such rate of speed shall be *prima facie* evidence that the person operating such motor vehicle or motorcycle is running at a rate of speed greater than is reasonable and proper, having regard to the traffic and the use of the way, or so as to endanger the life or limb or injure the property of any person. Section 22 is merely a somewhat involved statement of what rate of speed shall be *prima facie* evidence of a disregard of duty and consequent negligence and liability. It first states the duty of every person in the use of a highway by a motor vehicle or motorcycle, which would be and is the law without any statute. It then declares that a rate of speed exceeding ten miles an hour in a business section shall be *prima facie* evidence of negligence, the whole effect of the section being to fix certain rates of speed in different localities which shall be *prima facie* evidence of negligence. The ordinance and the statute are of precisely the same character, and both are rules of law and not rules in the law of evidence. (Chamberlayne on Evidence, sec. 994.) As a matter of law, a failure to give the signal required by the ordinance and a rate of speed exceeding ten miles an hour in a business section would each be *prima facie* evidence of negligence. The case did not rest, alone, upon either, but the verdict was to be determined by a consider-

ation of all the evidence. The plaintiff testified that he was going about twelve miles an hour until he was from ten to fifteen feet from the automobile, when the collision was inevitable, and one of his witnesses said that he was driving between twelve and fifteen miles per hour just before the accident, and another that at the time of the accident he was running somewhere along fifteen miles an hour. This made a *prima facie* case of negligence on his part under the statute, but he offered evidence, to meet that *prima facie* case, that the roadway was clear and no one in the way. It was proved and not denied that no signal was given by the hand, which made a *prima facie* case of negligence of the driver of the automobile under the ordinance, but she testified that she looked back and waited for a Ford car to pass, and after it had passed looked back again and saw there was nothing more coming, which was intended to meet the *prima facie* case under the ordinance. The plaintiff offered evidence that the street was clear, and the defendant offered evidence of the same character as to the condition of the street at the same time. There was other evidence to be considered which need not be mentioned, and the issues were to be determined upon all the evidence. The instruction given entirely ignored the evidence for the defendant that the driver of the automobile looked back and that no one was coming. Although the failure to give the signal was *prima facie* evidence of negligence, as soon as opposing evidence was received the case was to be determined on all the evidence, and if, as a matter of fact, there was no one coming who would have been benefited by the signal, the omission to give it could not create a liability, because it would have been useless. The instruction ignored all the evidence as to the rate of speed at which the plaintiff was running, which by the statute was *prima facie* evidence of his negligence. It is doubtful whether the ordinary juror would understand the legal meaning of the term *prima facie*, but at any rate the in-

struction was equivalent to advising the jury that if there was a failure to give the signal, which was admitted, the plaintiff had proved negligence of the defendant.

The court gave this instruction at the instance of the plaintiff:

"You are instructed that you as jurors are not artificial beings, governed by artificial or fine-spun rules; but you should bring into consideration of the evidence before you, your everyday common sense and judgment, as reasonable men; and those just and reasonable inferences and deductions which you as men would ordinarily draw from the facts and circumstances proven in this case, you should draw and act on as jurors. You are to believe as jurors what you would believe as men and there is no rule of law that requires you to believe as jurors what you would not believe as men."

All rules concerning procedure in court, the burden of proof and what facts shall constitute *prima facie* evidence are artificial in the sense that they are not natural. The instruction permitted the jury to disregard anything which they might regard as a fine-spun rule of law and left them to speculate and substitute natural information for rules of law. One of the consequences of the efforts to define reasonable doubt in criminal cases and to prevent jurors from entertaining a doubt simply because they are jurors is, it has not been regarded as wrong to advise them that there is no rule of law requiring them to doubt as jurors when they would not doubt as men. It has been questioned whether such instructions concerning reasonable doubt tend to enlighten jurors on the subject, but this instruction goes beyond those referred to and invites the jury to disregard any rule of law which they may regard as artificial or fine-spun. The court having given the jury the rules of law in other instructions, gave them liberty to disregard them if in their opinion they were artificial or fine-spun. It was vicious and should never be given.

It is assigned for error that the court permitted the declaration to go to the jury. The jury should not be permitted to take the pleadings in civil cases to the jury room on their retirement to determine what the issues are. (*Elgin, Aurora and Southern Traction Co.* v. *Wilson,* 217 Ill. 47; *Bernier* v. *Illinois Central Railroad Co.* 296 id. 464; *Elie* v. *Adams Express Co.* 300 id. 340.) The defendant asked the court to give, and the court gave, two instructions by which the jury were to determine the issues from the plaintiff's declaration, and he cannot complain that the jury had the declaration.

The judgments of the Appellate Court and circuit court are reversed and the cause is remanded to the circuit court.

*Reversed and remanded.*