(No. 33567.— )

CERNY-PICKAS & COMPANY *et al.*, Appellees, *vs.* C. R. JAHN COMPANY, Appellant.

*Opinion filed November 23, 1955—Rehearing denied Jan. 16, 1956.*

KLINGBIEL, and MAXWELL, JJ., dissenting.

CLAUSEN, HIRSH & MILLER, of Chicago, for appellant.

EDWARD S. COATH, EDWARD J. BRADLEY, and KATHERINE NOHELTY, all of Chicago, for appellees.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

Cerny-Pickas & Company leased to C. R. Jahn Company a large industrial building with machinery and equipment. The building was destroyed by fire. A jury found that the fire was caused by the negligence of the lessee, and the primary question here is whether under the provisions of the lease the lessee is responsible for the loss.

The lessor and the Orient Insurance Company, as subrogee under the lessor's insurance policy, brought an action in the superior court of Cook County against the lessee to recover damages for the loss of the leased building, machinery and equipment. The lessor claimed $125,000; the subrogee, $23,617.54. The complaint alleged that the fire was caused by the lessee's violation of ordinances of the city of Chicago regulating the construction of partitions in the building and the installation of a gas water heater, and by other acts of negligence. The lessee denied the charges of negligence and made the special defense that the lease wholly exempted and exonerated it from any liability to the lessor, or anyone claiming to be subrogated to it, for any loss or damage caused by fire, whether or not the fire was caused by the lessee's negligence.

The case was first decided on the pleadings. A judgment was entered in favor of the lessee upon the ground that the provisions of the lease, as a matter of law, completely exonerated it from liability for loss due to fire. Upon appeal the Appellate Court for the First District held that, because of considerations of public policy, exculpatory provisions in contracts should not be construed to exempt a party from liability for loss resulting from its own negligence or the violation of a positive duty imposed by law, and that the provisions of the lease were not a bar to recovery. (347 Ill. App. 379.) This judgment of the Appellate Court was interlocutory, and so was not subject to review by this court. After the case was remanded, and before it was tried upon the merits, this court, in *Jackson* v. *First National Bank of Lake Forest*, 415 Ill. 453, expressed different views with respect to the public policy applicable to exculpatory clauses in leases.

Upon remandment a jury trial resulted in a verdict and judgment against the lessee in the sum of $49,538.29. The Appellate Court affirmed, (4 Ill. App. 2d 164,) and we granted leave to appeal.

The relevant provisions of the lease are these:

"2. \* \* \* Lessee will keep said premises, including all appurtenances, in good repair, \* \* \*; and upon the termination of this lease, in any way, will yield up said premises to Lessor in good condition and repair (loss by fire and ordinary wear excepted) \* \* \*.

"8. Lessor shall not be obliged to incur any expense for repairing any improvements upon said demised premises or connected therewith save as in this clause provided, and the Lessee at his own expense will keep all improvements otherwise in good repair (injury by fire, or other causes beyond Lessee's control excepted) as well as in a good tenantable and wholesome condition, and will comply with all local or general regulations, laws and ordinances applicable thereto \* \* \*.

"14. Lessor shall pay for fire insurance on the building and equipment and machinery hereby leased, and Lessee agrees to pay for any increase in fire insurance premium on such insurance policies, due to any increase in the insurance rate due to the nature of Lessee's business, or the manner of its conduct of the business.

"26. Before entering into possession of said premises, Lessee shall pay for and deliver to Lessor public liability insurance in the amount of Ten Thousand Dollars; also civil riot and commotion insurance, covering the leased property.

"29. In case said premises shall be rendered untenantable by fire or other casualty, Lessor may, at his option, terminate this lease, or repair said premises within sixty days, and failing so to do, or upon the destruction of said premises by fire, or other casualty, the term hereby created shall cease and determine."

The effect of public policy upon exculpatory clauses in leases of business property generally was considered in *Jackson* v. *First National Bank of Lake Forest*, 415 Ill. 453, and what was there said need not be repated here.

More particularly, provisions which relieve the lessee from responsibility for its own negligence with respect to fires have been held to be valid contracts between private individuals with reference to private interests and not against public policy. (*Santa Fe, Prescott & Phoenix Railway Co.* v. *Grant Bros. Construction Co.* 228 U.S. 177; Cf. *Checkley* v. *Illinois Central Railroad Co.* 257 Ill. 491; *Kansas City Stock Yards Co.* v. *A. Reich & Sons, Inc.* —— Mo. ——, 250 S.W. 2d 692.) That one of the grounds of negligence charged in this case was the lessee's failure to comply with the building ordinances in making alterations in the building is not, we think, of controlling significance. See, *Johnson* v. *Pendergast,* 308 Ill. 255.

The argument most strongly urged against exoneration of the lessee is that the lease does not in so many words provide that the lessee be free from liability for fires resulting from its own negligence. Of course, if the lease contained such an express provision, that would be the end of the matter. But because the contingency was not covered by express language, it does not follow that the instrument may not, when all of its provisions are considered, show that the parties themselves intended that the lessee should not be liable. That determination is to be made upon a consideration of the instrument as a whole. *MacAndrews & Forbes Co.* v. *Mechanical Mfg. Co.* 367 Ill. 288; *Llewellyn* v. *Board of Education,* 324 Ill. 254; *West* v. *Ranney Refrigerator Co.* 261 Ill. 560; *Consolidated Coal Co.* v. *Peers,* 150 Ill. 344.

Looking then to the terms of the lease, it is clear that the parties contemplated the contingency that the building might be damaged or destroyed by fire. The first reference to that possibility is in clause 2 of the lease which provides that upon termination of the lease the lessee will turn over the premises to the lessor "in good condition and repair (loss by fire and ordinary wear excepted) * * *." In the absence of any contrary expression in the lease, the

lessee is not liable to the lessor for damages to the premises from fire which is not the result of his own negligence. (Tiffany, Landlord and Tenant, sec. 111.) Therefore, unless this clause of the lease exempts the lessee from liability for loss by fire resulting from his own negligence, it does no more than restate the lessee's common-law obligation. Upon the authority of *Day Wood Heel Co.* v. *Rover,* 123 Ohio St. 349, 175 N.E. 588, and *Slocum* v. *Natural Products Co.* 292 Mass. 455, 198 N.E. 747, the lessor concedes that the effect of this clause is "to relieve the lessee under the lease from the duty of restoring the building regardless of how it may have been damaged. Under this form of lease there was no longer any *contractual duty* on the lessee to restore the building." The lessor argues, however, that the lessee's liability in tort remains, although its liability in contract has been eliminated.

There are areas of the law in which the distinctions between liability in contract and liability in tort may be significant, despite their remote and accidental origin. We are not satisfied, however, that such distinctions are relevant in determining the meaning to be given to words used by laymen in defining their rights and obligations. The word "fire" is used without qualification throughout the lease before us. Its natural meaning would include all fires, regardless of their origin. To express the meaning for which the lessor contends, the lease would have to be altered to modify the word "fire" by the qualifying words "not due to lessee's negligence." It is more reasonable to assume, we think, that laymen would regard the word "fire" as including all fires whether of negligent origin or otherwise. Under familiar standard fire insurance policies the insurer is obligated to pay for fires caused by negligence. *Lycoming Ins. Co.* v. *Barringer,* 73 Ill. 230, 235; 6 Couch, Cyclopedia of Insurance Law, par. 1488; Brewer, An Inductive Approach to the Liability of the Tenant for Negligence, 31 Boston L. Rev. 47.

Under the construction urged by the lessor it would be necessary for both parties to the lease to carry fire insurance if they are to be protected. The lessee would have to insure against fires due to his negligence, and the lessor against fires due to other causes. Whether the kind of policy the lessee would have needed was commercially available when the present lease was entered into is at best dubious. (31 Boston L. Rev. 47.) In the present lease the lessor agrees in clause 14 to pay for fire insurance upon the leased building, equipment and machinery. The parties contemplated that the risk of loss by fire should be insured against and we see no reason to suppose that they did not contemplate the customary insurance policy which covers both accidental and negligent fires. Although clause 26 requires the lessee to carry specified kinds of insurance, its responsibility with respect to fire insurance is limited to the obligation to pay for any increase in the insurance premium due to the nature of its business or the manner in which it was conducted. From the lease as a whole we conclude that the lessee was not to be liable for loss by fire regardless of the cause of the fire, and that the parties intended that the lessor should look solely to insurance as compensation for damage caused by any kind of fire.

While the cases are not in accord, we believe that the result here reached is supported by better reasoned decisions. Seventy years ago in *Lothrop* v. *Thayer,* 138 Mass. 466, 475, the court said: "The ancient law has been acquiesced in, and consciously or unconsciously, the cost of insurance to the landlord, or the value of the risk enters into the amount of rent." And in the leading case of *General Mills* v. *Goldman,* 184 Fed. 2d 359, the court said (p. 366): "They necessarily consciously figured on the rentals to be paid by the tenant as the source of the fire insurance premiums and intended that the cost of insurance was to come from the tenants. In practical effect the tenant paid the cost of the fire insurance." *Day Wood Heel Co.* v. *Rover,* 123

Ohio St. 349, 175 N.E. 588, also supports our conclusion.

The principal cases to the contrary are *Carstens* v. *Western Pipe and Steel Co.* 142 Wash. 259, 252 Pac. 939, *Morris* v. *Warner*, 207 Cal. 498, 279 Pac. 152, and *Winkler* v. *Appalachian Amusement Co.* 238 N.C. 589, 79 S.E. 2d 185. In the first two of these cases it does not appear that the leases contained provisions with respect to insurance like those in the lease before us. In the third case, similar insurance provisions were involved, but the court relied upon the dissenting opinion in the *General Mills case* and upon the first opinion of the Appellate Court in the present case.

The judgments of the Appellate Court and the superior court of Cook County are each reversed, and the cause is remanded to the superior court, with directions to dismiss plaintiff's amended complaint.

*Reversed and remanded, with directions.*

Mr. JUSTICE KLINGBIEL, dissenting:

I cannot accept the reasoning or conclusion of the majority.

It cannot be doubted, as the majority opinion emphasizes, that the parties contemplated the contingency of damage or destruction by fire. But the question here concerns not the physical means whereby the premises were damaged but the agency whereby the means were brought into operation. The subject of dispute is whether the fires contemplated are merely accidental ones, or whether they include as well fires caused by the fault of the lessee. The validity of exculpatory clauses is likewise beyond the scope of the present inquiry. As the majority opinion points out, this question has been settled. The issue is solely one of construction.

The language relied upon by the majority is found in clause 2 of the lease which provides that upon termination the lessee will turn over the premises to the lessor "in good condition and repair (loss by fire and ordinary wear ex-

cepted)." Does that clause mean that the lessee is to be relieved from liability for fire damage caused by its own negligence? We ought not to so hold unless the lease definitely and certainly provides therefor. Since injury by negligence commonly results in liability, relief from such consequence should be clearly agreed upon between the parties, and ambiguity should not leave in doubt the question of intention. "Whether an exception of liability for injury by fire includes a fire caused by the tenant's negligence depends on the intention of the parties, but, unless the exception clearly contemplates damage caused by the tenant's negligence, it will not be construed to except liability for such injury." (51 C.J.S. 1162, Landlord and Tenant, sec. 414.) Courts should not, because a more equitable result may seemingly be reached thereby, construe into a contract exculpatory provisions that do not specifically appear therein.

I cannot agree that a covenant to surrender premises in good condition "loss by fire and ordinary wear excepted" may be reasonably construed to relate to the lessee's tort liability. It concerns rather the lessee's contractual liability to make repairs or rebuild in case of destruction by fire. The reason for inserting these common exceptions in surrender clauses of leases is apparently to relieve a tenant, who has agreed to keep the premises in repair, from a contractual liability to repair or rebuild structures damaged or destroyed by accidental fire. Appearing as they do in paragraphs relating to the upkeep and return of the property, such exceptions are not designed to relieve the lessee from tort liability. Had the parties intended to excuse the lessee from negligence in causing a fire or any other type of damage they would doubtless have said so in express terms. It is to be expected that a lessor would agree to negative any contractual duty on the part of the lessee to restore premises damaged by accidental fires. But it is not natural that a lessor would agree to release the lessee

from liability for damage caused by its own negligence. Such terms would hardly be looked for in a contract between business men. The general rule is in accord with this common understanding. Thus, in 32 Am. Jur. 669, Landlord and Tenant, section 783, it is stated: "A tenant is, however, liable for injury to his landlord from the destruction by fire of a building on the demised premises caused proximately by the tenant's negligence, even though the lease contains a provision that at the end of the term he shall yield possession 'subject to loss by fire.' "

It seems clear to me that the contingency contemplated by the parties in the case at bar was one of loss from accidental fires only. This is evident from the exception in paragraph 8 of the lease, which refers to "injury by fire, or *other* causes beyond Lessee's control." (Emphasis supplied.) Use of the word "other" indicates that the "fire" contemplated by the lease was fire beyond lessee's control, or fire not caused by its negligence or other fault. The majority opinion says that since the lessee would not be liable for accidental fires even in the absence of provisions to that effect, the inclusion of the clause evidences an intention to enlarge the scope of its exculpation so as to include negligent fires. But in my opinion a proper construction of the clause leads to an exactly opposite conclusion. The clause refers to loss by ordinary wear as well as to loss by fire. The lessee would not be liable for loss by "ordinary wear" even in the absence of the clause, and unless those words mean something more, the clause in this respect merely restates the common-law consequences. Yet it could hardly be maintained that "ordinary wear" was meant to include negligent damages to the premises. If the clause does no more than restate the lessee's common-law obligation as to loss by ordinary wear, such must be likewise the limit of its effect as to loss by fire. The two are treated exactly alike. If, as the majority opinion declares, the word "fire" is meant to include all fires regard-

less of their origin the lessee would seem to be exonerated from liability even for those caused with malice or intent to destroy. Certainly the word was not intended to have such an unqualified meaning.

The argument that the cost of insurance enters into the amount of rent has no more validity here than the converse argument that reduced risks result in lower insurance costs and hence in lower rentals. The former type of argument is frequently used in proposing legislation for liability without fault, but it is hardly appropriate in determining rights and liabilities based upon consent, intention, or tortious conduct. Carried to its logical conclusion it would substantially refashion the law of torts in most commercial affairs.

The lease in the case at bar does not refer to injury through negligence of the lessee, and there is no specific exemption of liability for the consequences of its negligence. Contracts exempting liability for negligence are strictly construed against the party relying on them, and clear and explicit language is required to absolve a person from such liability. There is no basis for such a construction in the present case. The Appellate Court, in my opinion, rightly affirmed the judgment of the trial court, and its judgment should be affirmed.

Mr. JUSTICE MAXWELL concurs in the foregoing dissent.