**DUBUQUE FIRE AND MARINE INSURANCE COMPANY**

v.

**UNION COMPRESS AND WAREHOUSE COMPANY et al.**

**UTAH HOME FIRE INSURANCE COMPANY**

v.

**UNION COMPRESS AND WAREHOUSE COMPANY et al.**

**GULF INSURANCE COMPANY**

v.

**UNION COMPRESS AND WAREHOUSE COMPANY et al.**

**HOUSTON FIRE AND CASUALTY INSURANCE COMPANY**

v.

**UNION COMPRESS AND WAREHOUSE COMPANY et al.**

**TRINITY UNIVERSAL INSURANCE COMPANY**

v.

**UNION COMPRESS AND WAREHOUSE COMPANY et al.**

**GENERAL INSURANCE COMPANY OF AMERICA**

v.

**UNION COMPRESS AND WAREHOUSE COMPANY et al.**

**PACIFIC NATIONAL FIRE INSURANCE COMPANY**

v.

**UNION COMPRESS AND WAREHOUSE COMPANY et al.**

Civ. A. Nos. 4607–4613.

United States District Court
W. D. Louisiana, Monroe Division.
Dec. 20, 1956.

Thomas W. Davenport, Monroe, La., James J. Davidson, Jr., and Richard C. Meaux, Davidson, Meaux, Onebane & Nehrbass, Lafayette, La., for plaintiffs.

John C. Morris, Jr., Hunt & Morris, Rayville, La., for defendant.

BEN C. DAWKINS, Jr., Chief Judge.

Since our original opinion was rendered, D.C., 143 F.Supp. 128, Union Compress and Warehouse Company, Inc., (called "Union") has filed motions, amended and supplemented, for vacation of judgments, for a new trial, and for a rehearing. These motions are based upon the following contentions:

1. That this Court committed factual and legal error in failing to find that L. S. U. received a valid legal consideration for Union's occupancy of L. S. U.'s barn, or that Union legally was L. S. U.'s lessee;

2. That the Court correctly found that Union's occupancy was with the knowledge and consent of L. S. U.,

through Dean Lee, who was to notify plaintiffs, as L. S. U.'s fire insurers, who were to be paid by Union for the additional premiums required by such use; but that the Court committed error in failing to hold that Union thereby was exonerated from its negligence, if any, and is entitled to be treated as an additional insured, covered by L. S. U.'s policies;

3. That the Court erred in applying the doctrine of *res ipso loquitur* because there is no proof that a fire, such as the one that occurred here, does not happen ordinarily in the absence of negligence, the evidence being to the contrary;

4. That error was committed in failing to find that the presumption of negligence arising from the doctrine of *res ipsa loquitur*, if applicable, has not been successfully rebutted by Union;

5. That the Court erred in holding, contrary to the weight of the evidence, that Union should have used watchmen to patrol the areas where no other employees were working;

6. That the Court erred in finding that plaintiffs have sustained their burden of proving that the barn was destroyed through negligence on the part of Union; and,

7. Finally, that error was committed in assessing all costs against Union, since plaintiffs failed to prevail against Livestock; and that Union should not be required to pay more than one-half of the costs on that account.

Feeling that our findings as to points, 1, 3, 4, 5 and 6 are amply supported by the evidence and already have been covered adequately in our original opinion, we will stand upon our conclusions in those respects. We did not cover points 2 and 7 in that opinion because they previously had not been argued or briefed, but now proceed to consider them.

As authority for its position on point 2, Union relies upon General Mills, Inc., v. Goldman, 8 Cir., 1950, 184 F.2d 359; Fire Association of Philadelphia v. Allis-Chalmers Mfg. Co., D.C.N.D. Iowa 1955, 129 F.Supp. 335; Cerny-Pickas & Co. v. C. R. Jahn Co., 1955, 7 Ill.2d 393, 131 N.E.2d 100; and United States Fire Insurance Co. v. Phil-Mar Corp., Ohio App. 1956, 131 N.E.2d 444.

Without discussing those cases in detail, we find them to be clearly distinguishable from this one. In each case, except Allis-Chalmers, there was a written lease contract containing a "surrender clause" which, together with other facts, plainly showed that the lessor intended to exonerate the lessee from loss by fire caused by the latter's negligence, and for the lessee to be included as an insured under the lessor's fire insurance policy. In Allis-Chalmers, the defendant had sold certain allegedly defective electrical equipment to plaintiffs' insured, causing a fire loss which plaintiffs paid, taking subrogation to the insured's rights. The Court recognized and enforced a written limitation of liability agreement, which was unambiguous and valid under the law of Iowa, the *lex loci contractus*.

█ In the present case, there was neither a written or verbal lease, but a mere oral license for Union to use L. S. U.'s property. Not a word of testimony is in the record as to any agreement, express or implied, for exoneration of Union from liability for its own negligence. Neither is there any evidence from which it reasonably could be implied that the parties intended for Union to be covered by L. S. U.'s fire insurance, even though it was understood that Union would pay, not the regular fire insurance premium on the barn, but merely the excess which its use of the barn for cotton storage would require.

In its dealings with Livestock, Union was careful enough to enter into a written lease of Livestock's barn, which theretofore had been uninsured, and to take out a fire insurance policy including both Livestock and Union as covered insureds. It also obtained fire insurance in its own name upon the cotton in both barns. But, as to L. S. U.'s building, it made no effort to get a written lease or license, with an exoneration clause, and did not in any way attempt to have itself included as a named insured in L. S. U.'s policy. It never directly contacted, or at-

tempted to contact, either Dean Lee or L. S. U.'s fire insurers or their agents in order to effect an agreement for exoneration and/or joint coverage. In short, after obtaining Dean Lee's bare permission to use the barn, and his statement to Mr. Martin that he would notify the insurers, Union took no steps whatever to secure any right on its part to claim exoneration for its negligence or to be sure that it was included as a joint insured under L. S. U.'s policies covering its barn. In such circumstances there can be no estoppel against L. S. U. or plaintiffs from holding Union liable for its negligence.

Even if there had been some semblance of an agreement for Union to be exempt from its own negligence—and, as shown, there is not a scintilla of evidence to that effect here—such stipulations are not favored by the law and always are to be strictly construed. They must be clear and explicit. 17 C.J.S., Contracts, § 262, p. 645; 38 Am.Jur., "Negligence", § 8, pp. 649–50; 175 A.L.R. 8, et seq.; 6 Williston on Contracts, § 1751C; Celanese Corp. of America v. John Clark Industries, 5 Cir., 1954, 214 F.2d 551; Fairfax Gas & Supply Co. v. Hadary, 4 Cir., 1945, 151 F.2d 939; and authorities therein cited.

Moreover, these authorities hold that such agreements, even if express and unequivocal, are to be construed as illegal and unenforceable where they are contrary to the public interest. Here, the public interest definitely was involved, and would have been adversely affected, in that L. S. U.'s barn was public property, belonging to an agency of the State. Neither Dean Lee nor anyone else possessed the power to execute an agreement exonerating Union from liability for its negligence, and if such a stipulation had been made, it would not have been legally enforceable.

While we do not think it would have been illegal for Union to have arranged for joint fire insurance coverage with L. S. U., having itself included as an insured, it made no effort to see that this was done and must bear the consequences of its business neglect, together with the liability accruing from its negligence in the cotton storage operation. Consequently, we find Union's defense of exoneration and joint coverage to be wholly without merit.

On the question of costs, Union has submitted no authorities to support its contention that one-half of the costs should be borne by plaintiffs, and we see no valid reason why this should be decreed. Except for the expense of service upon Livestock, no costs were incurred by reason of its inclusion as a defendant which would not have been incurred had Union been sued alone. Therefore, we hold that Union must pay all costs except those incurred in effecting service upon Livestock.

For these reasons, the motions for vacation of judgments, new trial and rehearing, are denied.